## W. Whittikam v. A. Swain.

A tutor who permits a debt due to his ward to become prescribed is personally bound for it.

An administrator should be held to proof of due diligence in the collection of the active debts of the succession. He cannot be relieved of responsibility by showing that he offered them for sale at public auction in a lump, and could not get a bid.

The fee of counsel for filing the account of the tutor, is an expense chargeable to the minor, under Art. 852, C. C.

A tutor who pays a debt from which his ward has been relieved by prescription, is liable to the ward for the amount so paid.

APPEAL from the District Court of the Parish of Point Coupée, *Farrar*, J. *Cooley*, for plaintiff, cited succession of *Guiltlemin*, 2 Ann, 634, *Monget* v. *Walker*, 4 Ann. 214. *Provosty*, for defendant.

BUCHANAN, J. This is an appeal from a judgment upon opposition to an account of tutorship. The judgment of the District Court, which appears to have been laboriously and carefully prepared, fixes the balance due the plaintiff by his tutor at the sum of two thousand and twelve dollars and twelve cents, with interest. The representatives of the estate of the tutor and of his security have appealed, and assign various errors. The appellee has also prayed, in his answer to the appeal, that the judgment of the Court below be amended in his favor in various particulars.

The first error assigned by appellant, is the charging the tutor with a sum of $2544 90, being the balance due by *Rutis Morgan* on notes given with *Charles Morgan, Jr.*, as endorser, for the price of land belonging to the minor and his co-heirs, sold at probate sale, and purchased by said *Rutis Morgan*. The balance in question remained after the seizure and sale of the land in the hands of *Morgan*. Upon this point, we do not think the District Court erred. The notes of *Rutis Morgan* matured in 1843, 1844, 1845 and 1846. The endorser was the security of the tutor, on his bond of tutorship. None of the notes were paid, and no steps were taken to render the property sold liable, until January, 1847, when executory process was issued, and the property was sold, leaving the above mentioned deficit. The drawer of the notes, *Rutis Morgan*, appears to have lived until after the last of them had matured, but no attempt was ever made to make the money by a personal action against himself or his endorser. All the notes were prescribed before the plaintiff reached the age of majority; and we think that the tutor and his security are clearly liable.

The appellant next avers that the District Court erred in allowing plaintiff one-fourth of the amount of the notes and accounts due his mother's estate, which were not sold by the Parish Judge for want of a bid. This circumstance, on which the appellant lays much stress, appears to us of no importance. The mode adopted by the tutor in this instance, of settling an estate by setting up at auction to the highest bidder, the outstanding claims by note and book account, for whatever they will fetch, within a short period after the death of the ancestor of the minor under his tutelage, is at best objectionable; hardly warranted by law, and liable to the greatest abuses. This case seems to illustrate the latter observation. About two thousand dollars of nominal value of notes and accounts due the estate of plaintiff's mother were sold, in six lots, for the aggregate price of less than seventy dollars; and, among other suspicious circum-

stances, we have been struck by the fact, that in one of those lots, amounting to two hundred and fifty dollars, and adjudicated for twenty-five dollars, was included a note of *David Gay* for fifty dollars; while the plaintiff is charged in the account of tutorship with one hundred and five dollars and eighty-seven cents, amount of an account of this same *David Gay* for boarding, washing and schooling of plaintiff, which the voucher produced shows to have been paid by the tutor six months before the sale in question, or while he had *Gay's* note in his hands. This fact evinces the grossest negligence and mismanagement of the tutor in his administration; and we think the doctrine to be properly applicable : that an administrator should be held to proof of due diligence in the collection of the active debts of the succession. He cannot be relieved of responsibility by showing that he offered them for sale at public auction in a lump, and could not get a bid.

The appellant also contends that the District Court improperly classed the claims of *Boyle* and others as debts of the community of acquests of plaintiff's mother and her last husband, *Cooper.* We think, after examining the evidence, that the Judge did not err.

The appellant next contends that the judgment does not allow the item of $100 charged in the account for the fee of counsel, who filed the account. This item comes properly within the purview of the article 352 of the Civil Code, and we think its amount reasonable.

On the other hand, the appellee claims the amendment of the judgment appealed from, in these particulars :

1st. By rejecting the item of $25 charged as the one-fourth of the balance due on *Bernoudy & Dufilho's* note. That note matured in December, 1834, some seven years before the death of the maker, plaintiff's mother, and though made for $240, an endorsement shows that at maturity there was only due $98 83 upon it. In December, 1843, being nine years after the maturity of the note, an endorsement signed by the tutor shows that he paid it. The circumstances under which the tutor took upon himself to renounce a prescription acquired before the commencement of his administration, do not appear. The Civil Code, Art. 3425, declares that the capacity to alienate must exist in him who renounces a prescription acquired, in order to make the renunciation valid. It is clear that a tutor is without capacity to alienate the property of his ward. He cannot therefore renounce the prescription which has been acquired. See 21st Duranton, No. 130, p. 196.

2d. By rejecting an item of a fee allowed a lawyer for professional services in the hypothecary action against the widow of *Rutis Morgan.* The record of that suit is in evidence, and we think the charge of Mr. *Ilsley* is not unreasonable.

3d. By reducing the allowance to the tutor for the personal expenses of his ward from $200 per annum to the amount of his revenue, which in argument are assumed at five per cent. on the judgment rendered by the District Court. The Article 343 of the Civil Code certainly favors this position of the appellee's counsel. The expenses of the support and education of the minor, says that Article, should never exceed his revenues. *Hubbell* v. *Hubbell,* 5 Ann.; *Moore* v. *Nichols,* 5 L. R. In conection with this subject it is proper to notice a bill of exceptions in the record to the admission in evidence of an account in the tutor's handwriting, and unsupported by any voucher, of moneys expended by him for the personal expenses of his ward. We think the Court erred. By Art. 2244

WHITTIKAM.
v.
SWAIN.

and 2245 of the Code, parties cannot make their books evidence in their favor. 3 M. R., 188 ; 8 Rob. p. 6 : 12 Rob., 407.

The evidence shows that plaintiff was living with his tutor for about two years after the death of his mother ; that during that time the tutor furnished him nothing but the strict necessaries of life. It is even probable that the boy was not boarded by his tutor, but by a man named *Gay*, who has been already named ; for we find among the evidence the following voucher :

"Mr. *J. W. Swain*, tutor of *William Whittikam*, Dr. to *David Gay* for boarding, washing and schooling,    -    -    -    -    -    -    $96 87
    *Dr. Lyne*, bill for,    -    -    -    -    -    -    -    -    9 00
                                                              $105 87
Dec. 10, 1842. Rec'd payment, *David Gay*."

The judgment of the Court below has reduced this bill by the amount of *Gay's* note in favor of the estate, which the tutor ought to have collected. And we think that the amount allowed by that judgment should go in deduction of the amount to be allowed to the tutor for the support of his ward, which we fix at $210, or with the deduction of $55 paid *Gay*, one hundred and fifty-five dollars.

It is therefore decreed that the judgment of the District Court be amended, 1st, by allowing the item of one hundred dollars paid *A. Provosty* for professional services in rendering the account of tutorship ; 2d, by rejecting the item No. 33 in the account of tutorship, being $25 for balance still due on *Bernoudy & Dufilho's* note ; 3d, by reducing the allowance to the tutor for the support and education of the minor from $400 to $155 ; that the plaintiff have judgment against *Augustine Swain*, as administratrix of the succession of her deceased husband, *J. W. Swain*, and against *Charles Morgan, Jr.*, as administrator of the succession of his deceased father, *Charles Morgan, Sr.*, security of said *J. W. Swain*, on his bond as tutor of the plaintiff, *in solido*, for the sum of two thousand one hundred and eighty-two dollars and twelve cents, with interest at the rate of five per cent. per annum from the third of April, 1847, until paid the costs in both Courts to be paid by the appellants.